# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **RONALD K. SERAFIN,** | ) CASE NO. 4:22-CV-00467 |
| *Plaintiff,* | ) JUDGE BENITA Y. PEARSON |
| v. | ) |
| | ) **OPPOSITION TO DEFENDANTS,** |
| **THOMAS D. BROWN, et. al.** | ) **THOMAS D. BROWN AND SCHNEIDER** |
| | ) **NATIONAL CARRIERS, INC.'S** |
| *Defendants.* | ) **MOTION TO EXCLUDE PLAINTIFF'S** |
| | ) **EXPERT LINDA LAJTERMAN** |

**PLAINTIFF, RONALD K. SERAFIN'S MEMORANDUM IN OPPOSITION TO DEFENDANTS THOMAS D. BROWN AND SCHNEIDER NATIONAL CARRIERS, INC.'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT LINDA LAJTERMAN**

## I. PRELIMINARY STATEMENT

The Sixth Circuit recognizes a strong policy favoring adjudicating cases on the merits rather than the maneuvering or gamesmanship of counsel. While Defendants move to exclude the testimony of Plaintiff's Life Care Planner, Linda Lajterman, for late service of her report, Plaintiff's failure to timely serve this report was an honest mistake, and not the result of underhanded gamesmanship that would warrant the harsh remedy of exclusion.

This lawsuit arises out of a multi-vehicle, tractor trailer accident that occurred on Interstate-80 involving Plaintiff, Ronald K. Serafin ("Plaintiff"), and Defendants, Thomas D. Brown and Schneider National Carriers, Inc. ("Defendants")[1], resulting in the significant injuries to Plaintiff.

On July 20, 2022, Plaintiff served Defendants with a settlement demand that indicated that Plaintiff would be obtaining a life care plan for his future medical treatment. While under the mistaken belief that Plaintiff's expert reports were not due until April 13, 2023, Plaintiff served expert reports of his treating physicians in March 2023. Once these reports were obtained, Plaintiff diligently and quickly provided them to life care planner, Linda Lajterman, who authored a Life Care Plan. That report was served on March 20, 2023.

Ms. Lajterman's report was not objected to at the time of service and was served prior to the close of discovery, with sufficient time for Defendants to depose Ms. Lajterman, if requested. Notably, Defendants were aware that Plaintiff's expert disclosures were not timely, but rather than discussing this discovery issue with counsel, or even objecting at the time of service, instead Defendants led Plaintiff to believe that his reports were timely and did not object until the last hour at the time of mediation and an attempt at settlement.

---

[1] While other Defendants were named in the Complaint, those Defendants have since settled and are no longer involved in the case.

1

For the reasons set forth herein, Plaintiff can demonstrate that the failure to timely serve was both substantially justified and harmless, and therefore, it is respectfully requested that the Court deny Defendants' Motion to Exclude Plaintiff's Expert, Linda Lajterman.

## II. RELEVANT PROCEDURAL AND FACTUAL HISTORY

As a result of the subject accident, Plaintiff suffered serious and significant injuries for which he has undergone multiple surgeries and therapies. He continues to treat for those injuries to date. (Affirmation of Damon A. Vespi, Esq. ¶3 ("Vespi Affirmation"))

On May 20, 2022, counsel for the parties conferred regarding discovery pursuant to Fed. R. Civ. P. 26(f) and L.R. 16.3(b)(3), wherein Plaintiff's counsel advised the type of experts that would be named. On July 11, 2022, the Court held a case management conference and advised that discovery issues should be worked out amongst the parties. (*Id.*) This was interpreted to mean and include all discovery issues. (Vespi Affirmation ¶5)

Admittedly, Plaintiff's counsel misread the order and was under the mistaken assumption that, expert reports were not due until April 13, 2023. (Vespi Affidavit, ¶¶6; 9; 12)

On July 20, 2022, Plaintiff served Rule 26(A) Initial Disclosures and a formal demand breakdown. (Exhibit A - *Plaintiff's Formal Demand Breakdown*) In this demand, Plaintiff listed his non-economic and economic damages. (*Id.*) In the "Economic" portion, Plaintiff detailed all of his medical bills to date and indicated that there would be a **"Future Life Care Plan"** estimated at $1,000,000.00. (*Id.*) (*emphasis added*)

In December of 2022, Plaintiff was continuing to undergo treatment for his injuries. (Vespi Affirmation ¶7) This information was necessary for the treating physicians to author accurate narrative reports, particularly with regards to what future medical treatment Plaintiff would likely need. (*Id.*) A Life Care Plan is based upon future medical treatment needed as a result of the injuries suffered as a result of the accident. (*Id.*) To avoid speculation, the life care plan should be authored

2

after the completion of treatment when it has been determined whether the individual has permanent injuries and what future treatment will be needed to address and/or alleviate those injuries. (*Id.*)

Nevertheless, Plaintiff's counsel remained under the impression that reports were not due until April 13, 2023, and therefore, there was time for Plaintiff to continue treatment and for the experts to review those records and author their respective reports. (*Id.* at 8)

In early December of 2022, defense counsel requested consent to file a joint motion to extend discovery due to Plaintiff's continued medical treatment. Defense counsel did not specify that it would be limited to fact discovery. (*Id.* at 9) Nevertheless, Plaintiff's counsel, in good faith, agreed and permitted defense counsel to sign on behalf of Plaintiff. Again, Plaintiff's counsel acted under the belief that expert reports were due April 13, 2023. (*Id.* at 9; 11) Therefore, while Plaintiff's counsel was aware that the life care plan was contingent upon Plaintiff's continued treatment, Plaintiff's counsel did not request that the time to serve expert disclosures be extended as well. (*Id.* at 9) Additionally, while Defendants were aware that expert reports were not yet served, and that Plaintiff was continuing to treat, Defendant did not confer with Plaintiff regarding expert disclosures or the need to extend. (*Id.* at 9)

Accordingly, on December 9, 2022, Defendants filed a joint motion on behalf of all parties for the extension of the discovery deadline due to the fact that Plaintiff was continuing to undergo significant treatment for his injuries suffered in the accident and on December 20, 2023, the Court extended fact discovery to March 14, 2023. (Doc 55; Doc 56)

Again, at this time, Plaintiff believed, albeit mistakenly, that Plaintiff's expert reports were due April 13, 2023, and that by that date, the treating physicians would have the necessary factual information to author narrative reports, and in turn, a life care plan could be timely obtained and served. (Vespi Affirmation ¶11)

3

As the parties expected, Plaintiff continued to undergo treatment. Specifically, Plaintiff underwent a lumbar epidural in an effort to alleviate his pain. (*Id.* ¶13) However, he was advised at that time that if the epidural failed, a spinal stimulator would be an option. (*Exhibit B - Letter from Joshua Rovner, M.D.*)

During an early March phone conversation, Plaintiff's counsel reminded defense counsel of Plaintiff's intention to serve a Life Care Plan, as previously identified in the Settlement Demand made in July of 2022. (Vespi Affirmation ¶15)

On March 20, 2023, Plaintiff amended discovery to include the Cost Projection Report regarding projected future medical costs. (*See Defendants' Exhibit E – Report of Linda Lajterman*) This report was based upon the opinions of Plaintiff's treating physicians as to what future treatment Plaintiff will require as a result of the accident. (*Id.*) Defendants did not object to the service of this report. (Vespi Affirmation ¶16) Defendants did not request Ms. Lajterman's deposition, despite having ample opportunity and an expert deadline of April 13, 2023. (*Id.* ¶17)

On April 6, 2023, the parties engaged in mediation. At or around this time, Plaintiff' counsel learned *for the first time* that Defendants were objecting to Plaintiff's causation reports from the treating physicians. (*Id.* ¶19)

Upon learning that Plaintiff's counsel misread the order, and that now Defendants were objecting, Plaintiff's counsel promptly addressed it with defense counsel, again trying to work to resolve this discovery issue together. In this conversation, Mr. Roth advised that he would review Plaintiff's motion and that he might <u>consent</u> to accept the reports and jointly request an extension of discovery. (*Id.* ¶20) Plaintiff's counsel also promptly filed a motion to address the issue with the Court. (Doc 84)

4

Throughout the tenure of this case, Plaintiff has acted diligently and in good faith, without gamesmanship, to obtain discovery, communicate with defense counsel, and move this case forward to a just resolution. (Vespi Affirmation ¶22)

Defendants', however, now seek to bar Plaintiff's expert for late disclosure, while simultaneously seeking to continue their own discovery past the deadline, most recently in the taking of fact depositions three (3) weeks after the close of discovery despite these witnesses being identified in September 2022; and the April 11, 2023 filing of subpoenas for additional discovery.

### III. LEGAL ARGUMENT

**A.**  **Legal Standard**

The late service of an expert report required by Fed. R. Civ. P. 26(a) may be permitted if the failure to timely serve was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). "A noncompliant party may avoid sanction if there is a reasonable explanation of why Rule 26 was not complied with, or the mistake was harmless." *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015). "Harmless" is when the failure "involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (internal quotation marks omitted). The Sixth Circuit has intimated that the latter requirement of knowledge is further broken down into two parts: that opposing counsel knows "who [is] going to testify and to what they [are] going to testify." *Roberts v. Galen of Va., Inc.*, 325 F. 3d 776 (6th Cir. 2003). Furthermore, a late disclosure may be considered substantially justified or harmless if opposing counsel knew that they had not received these disclosures, never filed a motion to compel disclosure, and waited to voice an objection. *Brooks v. Skinner*, No. 1:14-cv-412, 2015 U.S. Dist. LEXIS 152586 (S.D. Ohio Nov. 10, 2015) at *7 (quoting *Roberts,* 325 F.3d at 783.).

5

In order to assess whether a party's noncompliant disclosure was harmless or substantially justified, the Court considers five factors:

(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014). The heart of this analysis is to separate "'honest', harmless mistakes from the type of underhanded gamesmanship that warrants the harsh remedy of exclusion." *Bisig v. Time Warner Cable, Inc.*, 930 F.3d 205, 219 (6th Cir. 2019) (internal citations omitted); *see also Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997) (recognizing that courts disfavor "the harshness of a sanction that deprives an innocent party of their day in court. . . .").

**B.     In Balancing the *Howe* Factors, Plaintiff's Late Disclosure of Linda Lajterman's Future Cost Projection Report was Substantially Justified and Harmless.**

While the Court has broad discretion to exclude untimely disclosures of expert testimony, Courts have recognized that this is harsh sanction. *Linetsky v. City of Solon*, No. 1:16-CV-52, 2016 U.S. Dist. LEXIS 145658 (N.D. Ohio Oct. 20, 2016)(permitting the late disclosure where the absence of bad faith and limited prejudice outweigh any fault by the plaintiff).

In *Creekmur v. Lowe's Home Ctrs*, No. 3:20-CV-00270-BJB-CHL, 2021 U.S. Dist. LEXIS 73717 (W.D. Ky. Apr. 15, 2021), the plaintiff failed to disclose experts, instead stating that "investigation [was] continuing." *Id.* at *3. The Defendant filed a motion to exclude the plaintiff from presenting expert testimony given her failure to timely disclose an expert. *Ibid.* Despite the fact that the plaintiff provided no explanation of her failure to disclose, in balancing the *Howe* factors, the Court granted the plaintiff additional time to serve because no trial date had been set,

expert evidence was critical to plaintiff's claims, and any prejudice could be cured by granting the defendant additional time. *10-11.

Similarly, in *Stephenson v. Fam. Sols. of Ohio, Inc.*, No. 1:18cv2017, 2022 U.S. Dist. LEXIS 17291 (N.D. Ohio Jan. 31, 2022), the defendant argued that the plaintiff failed to timely disclose evidence relating to damages, which was relied upon in the plaintiff's expert's supplemental report. *Id.* at *20. In balancing the *Howe* factors, the Court held that the plaintiff's delay in disclosing the evidence was substantially justified and harmless. *Id.* at *30.

In *Dennis v. Sherman*, the defendant did not disclose the treating physicians as experts within the timeframe set by the Court, but instead named the treaters as witnesses with knowledge related to the case. *2. The plaintiff moved to limit the treating physician's testimony to only that information gleaned from their diagnoses and treatment and barring them from testifying as to causation. *Ibid.* The defendant argued that even if the treaters could be considered "experts", the failure to disclose was harmless and that defense counsel believed that the plaintiff's counsel had no objection. *Ibid.* The Court held that the failure to disclose was harmless, denying the motion to bar the treating expert's testimony regarding causation. *Id. at 9-11*.

Here, all five factors weigh heavily in Plaintiff's favor warranting the late disclosure as harmless and substantially justified.

1) **THE REPORT OF LINDA LAJTERMAN, AND THE SUBSTANCE THEREIN, WAS NOT A SURPRISE TO DEFENDANTS AS THEY WERE AWARE A LIFE CARE PLAN WOULD BE SERVED.**

While catastrophic, this is a typical motor vehicle accident wherein Plaintiff alleges damages causally related to the accident. When viewing the particular circumstances of this case, there is little, if any, surprise to Defendants. On July 20, 2022, Defendants were *well aware* of what injuries Plaintiff alleged were caused by the accident and what treatment he received. (*See* Exhibit A – *Plaintiff's Formal Demand Breakdown*) More specifically, on July 20, 2022, Plaintiff

7

served a formal settlement breakdown wherein Plaintiff detailed his non-economic and economic damages. (*Id.*) In the "Economic" portion of this demand, Plaintiff listed all of his medical bills to date and indicated that there would be a **"Future Life Care Plan"** estimated at $1,000,000.00. (*Id.*) (*emphasis added*)

Therefore, as of July 2022, Plaintiff made clear that he intended to obtain a Life Care Plan, and detailed what the likely substance of that would be, even estimating the amount of said Life Care Plan. (*See* Exhibit A) Thereafter, Plaintiff diligently provided updated medical records as Plaintiff continued to treat for his injuries. Defendants also took Plaintiff's deposition where he again discussed his injuries and treatment related to the accident, and what future treatment he planned to undergo at the direction of his physicians.

Therefore, when Plaintiff served the expert report of Ms. Lajterman, Defendants were already aware that such report would be served and were already in possession of the information contained therein and there was no surprise. As such, this was not an eleventh-hour surprise before trial.

**(2)  THERE IS NO NEED TO CURE, AND IF THERE WAS, SUCH CURE COULD HAVE BEEN ACCOMPLISHED.**

In their moving brief, Defendants do not address the need to cure, likely because there is no need. Defendants' expert reports already address the opinions made by Plaintiff's experts – the opinions are simply competing. Since Defendants' experts do not causally relate Plaintiff's injuries to the accident, and do not opine that he will require future medical treatment, Defendants do not need a competing life care plan.

Furthermore, Plaintiff provided Ms. Lajterman's life care plan prior to the close of expert discovery and would have immediately produced Ms. Lajterman for depositions had Defendants requested those depositions. Notwithstanding, Plaintiff would have worked with Defendants to

8

produce Ms. Lajterman, even if past the April 13, 2023 deadline – as Plaintiff worked with Defendants to produce fact witnesses that were named in his September 2022 interrogatories, even though it was well past the close of fact discovery. (Vespi Affirmation ¶18) Therefore, the timing of service of Ms. Lajterman's report did not impact Defendants' ability to conduct its defense in any material respect.

Notwithstanding, even assuming *arguendo* that there is a need to cure to prevent prejudice, here Plaintiff is more than willing to produce Ms. Lajterman for deposition wherein they can explore the basis for her opinions. *See Stephenson,* 2022 U.S. Dist. LEXIS 17291 at *25-26 (finding that there is an opportunity to remedy any surprise through cross-examination).

### 3) PERMITTING PLAINTIFF'S EXPERT REPORTS AND TESTIMONY WOULD NOT DISRUPT THE TRIAL AS THERE IS NOT TRIAL DATE SCHEDULED.

The third factor likewise weighs in Plaintiff's favor. Currently, there is no trial scheduled and this case is just over one (1) year old. Furthermore, discovery in this case did not begin until less than a year ago in May of 2022 and Defendant had ample time to request the deposition of Ms. Lajterman prior to the expiration of discovery.

### 4) EXPERT TESTIMONY IS CRITICAL TO PLAINTIFF'S CASE.

The fourth factor also weighs heavily in Plaintiff's favor as expert discovery detailing future medical costs is absolutely critical to Plaintiff's case. "Exclusion is disfavored when evidence is crucial to an accurate resolution of the case." *Mortland v. Ohio State Univ.*, No. 2:19-cv-3361, 2022 U.S. Dist. LEXIS 230977 (S.D. Ohio Dec. 22, 2022) at *11; *Stephenson,* 2022 U.S. Dist. LEXIS 17291 at *27 (finding that precluding evidence relating to damages would significantly impair the plaintiff's case, and thus this factor weighs heavily in the plaintiff's favor).

As a result of this accident with Defendants' tractor trailer, Plaintiff has undergone multiple, life-altering surgeries and therapies to address his injuries suffered. While this now thirty-

9

eight (38) year old Plaintiff will never function to the same level due to his injuries and will continue to require ongoing treatment to alleviate at least some of his pain, under our system, his only recourse is monetary compensation by way of civil jury trial. As such, expert testimony regarding future medical costs is critical evidence to go before a jury to demonstrate the future medical costs Plaintiff will accumulate as a result of the accident. As such, excluding such testimony defies justice, particularly given the factual and procedural circumstances here.

While this evidence is critical to Plaintiff, permitting such evidence does not prejudice the Defendants. The Defendants have their own respective experts that argue that Plaintiff will not suffer any future medical costs or damages. Furthermore, if Defendants wanted to further explore Ms. Lajterman's opinions, they could have requested her deposition, but they did not.

### 5) PLAINTIFF'S FAILURE TO DISCLOSE WAS AN HONEST ERROR AND, WHEN COUPLED WITH THE NATURE OF PLAINTIFF'S ONGOING TREATMENT, WEIGHS IN HIS FAVOR.

Plaintiff's mistake in calendaring the date for expert disclosures was just that, an honest mistake. Plaintiff did not withhold information for any litigation advantage, failure to act diligently, or in a deliberate violation of the Court's deadline. Plaintiff also did not attempt to conceal his experts' identities or their opinions for any tactical advantage. In fact, Plaintiff timely disclosed upfront in this case on July 20, 2022 that Plaintiff would have future medical costs related to the accident, and that these future medical costs would be detailed in a Life Care Plan. (*Exhibit A*) Plaintiff even provided an estimate of the total Life Care Plan. (*Id.*)

Admittedly, Plaintiff's counsel was under the mistaken assumption that, expert reports were not due until April 13, 2023. (Vespi Affirmation, ¶¶6; 9; 12) Evidence of this honest error is supported by the procedural history of this case. Had Plaintiff thought the time to file expert reports was December 13, 2022, counsel *certainly* would have requested an extension of that deadline in

10

the joint motion to extend because a Life Care Plan is contingent upon Plaintiff's treating physician's narrative reports, which in turn were contingent upon his continued medical treatment.

Despite knowing Plaintiff's intention to serve a Life Care Plan, at no time did Defendants indicate that reports were overdue or that service of any reports would be objected to. In fact, when Plaintiff served Ms. Lajterman's report, no objection was made. Therefore, Plaintiff had no reason to believe that the service of this report was not acceptable or late. Instead, Plaintiff continued to act diligently and work in good faith with defense counsel, even producing Plaintiff's mother and fiancée for deposition on April 5, 2023, *three weeks after* the close of fact discovery and despite the fact that these witnesses were previously identified in September 2022.

From December 2022, until the onset of settlement discussions, Defendants never intimated that they would be objecting to Plaintiff's expert reports and/or that such reports were untimely. Instead, Defendants waited, likely to gain an upper hand at mediation, to indicate that they were objecting to the service of Plaintiff's experts.

**C.    Plaintiff acted in good faith at all times.**

Throughout the tenure of this case, while certainly advocating for our respective clients, Plaintiff's counsel was under the impression that the parties were working together in good faith, without gamesmanship, to obtain discovery and move this case forward to a just resolution. As demonstrated above, Plaintiff diligently obtained and served updated medical records, consented to Defendant's request to file a joint motion to extend, in communicating with defense counsel regarding expert reports, and in the service of his expert reports. Plaintiff continued to act in good faith in producing Plaintiff's mother and fiancée for deposition on April 5, 2023, *three weeks* after the March 14, 2023 close of fact discovery, despite Defendants awareness of these witnesses since September 2022.

Upon learning that Plaintiff's counsel misread the order, and that now Defendants were objecting, Plaintiff's counsel promptly addressed it with defense counsel and in moving the Court to correct it, again trying to work to resolve the issue together. (Vespi Affirmation ¶20; Doc 84)

This same good faith, however, was not extended to Plaintiff. Instead, despite knowing that Plaintiff's reports were not timely, Defendants continuously lead Plaintiff to believe that the reports were timely and lead Plaintiff to believe that they were working together to ultimately resolve the case fairly. Rather than discuss the discovery issue with Plaintiff's counsel, as instructed by the Court in July 2022, or even move the court to compel, Defendants intentionally waited until after settlement discussions began to object and raise the issue. *See Brooks v. Skinner*, No. 1:14-cv-412, 2015 U.S. Dist. LEXIS 152586 (S.D. Ohio Nov. 10, 2015)

## **CONCLUSION**

Plaintiff's failure to timely serve the expert report of Linda Lajterman was an honest mistake, and not the result of underhanded gamesmanship that would warrant the harsh remedy of exclusion. *Bisig*, 930 F.3d at 219. Therefore, when balancing the Sixth Circuit's factors, combined with the Sixth Circuit's preference to resolve cases on their merits, the scale weighs in permitting the late disclosure of Plaintiff's expert reports from Drs. Rovner, Sinha, and Patel, as such failure is both justified and harmless, involving an honest mistake. *See Berthelesen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990)("Trials on the merits are favored in the federal courts."); *see also Lesowitz v. Tittle*, No. 5:17-cv-2174, 2020 U.S. Dist. LEXIS 116642 (N.D. Ohio July 2, 2020).

Respectfully submitted,

**/S/CHRISTOPHER A. MARUCA**
**CHRISTOPHER MARUCA**
**THE MARUCA LAW FIRM, LLC**
201 East Commerce Street, Suite 316
Youngstown, OH 44503
Telephone: (330) 743-0300
Facsimile: (330) 743-0301
Email: cmaruca@marucalaw.com
*Local Counsel for Plaintiff, Ronald K. Serafin*

## CERTIFICATE OF SERVICE

I hereby certify that on 14th day of April 2023, the foregoing Brief and Certification of Service were filed electronically. Notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the filing receipt.

**/S/CHRISTOPHER A. MARUCA**
**CHRISTOPHER MARUCA**
**THE MARUCA LAW FIRM, LLC**
201 East Commerce Street, Suite 316
Youngstown, OH 44503
Telephone: (330) 743-0300
Facsimile: (330) 743-0301
Email: cmaruca@marucalaw.com
*Local Counsel for Plaintiff, Ronald K. Serafin*